IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.   17 - 00383 |
| SANDRO G. ZHININ | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Sandro G. Zhinin, has a deviant sexual interest in children. While he denies this, and hired a psychologist to support his denial, the facts of this case belie his bold claims. Zhinin was methodical, sneaky, and goal driven. A sentence of life is appropriate.

**I.   BACKGROUND**

Sandro G. Zhinin was indicted on July 20, 2017 with eight counts as follows: Counts One, Two, and Three, aggravated sexual abuse of a minor, in violation of Title 18, United States Code, Section 2241(c), Counts Four, Five and Six, travel to engage in illicit sexual contact with a minor, in violation of Title 18, United States Code, Section 2423(b), Count Seven, production of child pornography, in violation of Title 18, United States Code, Section 2251(a), and Count Eight, possession of child pornography, in violation of Title 18, United State Code, Section 2252(a)(4), all arising from defendant's sexual abuse of an 11-year-old girl.

On August 8, 2018, Zhinin pled to Counts One through Three and Counts Seven and Eight of the Indictment. The defendant also agreed to forfeiture of electronic devices used to commit the crime and to pay restitution. At the time of sentencing the government will move to dismiss Counts Four, Five, and Six and will recommend the defendant's sentence in this case run

1

concurrently to the sentence imposed in Commonwealth v. Sandro G. Zhinin, in the Lehigh County Court of Common Pleas, at docket number 39-CR-0002272-2017.  Sentencing is scheduled for January 4, 2018.

## II.     FACTUAL BASIS FOR PLEA[1]:

On March 11, 2017, an 11-year-old girl, referred to here as the "Minor" victim, was reported missing from her residence located in Northampton Borough, Northampton County, Pennsylvania to the Northampton Borough Police Department by her parents.   Later that day, the Minor returned home and told police officers an adult male known to her as "Sam" picked her up at the 4th Street Park in Northampton early that day.   "Sam" then drove her to the Scottish Inn, located in Hanover Township, Lehigh County, where he sexually assaulted her in Room 109.   On the same date, the Minor submitted to a sexual assault examination at Lehigh Valley Hospital. The exam revealed the Minor had injuries consistent with sexual assault.

On March 13, 2017, the Minor was interviewed by a Child Interview Specialist at the Lehigh County Child Advocacy Center.   The Minor related the following:   She met an individual known to her only as "Sam" via the website "Meet Me."   They began communicating via the websites / applications "Skype" and "Snapchat,[2]" and "Sam" eventually arranged to meet up with the Minor in person.   The Minor reported she had told "Sam" at some point during their communications that she was 11-years-old.   The Minor further reported that "Sam" picked her up

---

[1] The summary of facts is the same summary contained in the government's change of plea memorandum and read into the record during Zhinin's change of plea hearing.   Zhinin agreed during the change of plea hearing, the summarized facts are true and accurately reflect his criminal conduct.

[2] MeetMe is an online social networking service that enables individuals to locate and communicate with other individuals; Skype is an instant messaging online application that provides real time video chatting service that enables users to see the individual they are communicating with via webcam; and Snapchat is also an instant messaging application where videos and images can be shared with others; communications, videos and images shared via Snapchat are only available for a short period of time by design before being permanently deleted.

on March 4, 2017 from the 4th Street Park in Northampton Borough around midday.  "Sam" then drove her to the Red Roof Inn in Hanover Township, Lehigh County where he rented a room while she waited in the car.  "Sam" came back out and took her to the rented room where he began to kiss her and take her clothes off.  "Sam" proceeded to put on a condom, place his penis in the Minor's vagina and have sexual intercourse with her.  "Sam" then removed the condom and flushed it down the toilet.  Eventually "Sam" drove her to the area of her house and dropped her off down the street.

The Minor further reported that "Sam" picked her up again on March 11, 2017, in the mid afternoon from the 4th Street Park.  He drove her to the Scottish Inn in Hanover Township, Lehigh County where he already had a room rented.  They went to Room 109 where "Sam" proceeded to have vaginal intercourse with the Minor while wearing a condom.  "Sam" finished and flushed the condom down the toilet.  The Minor related that "Sam" waited for a few minutes before putting on another condom and having vaginal intercourse with her again.  Once he was finished, he again flushed the condom down the toilet.  The Minor reported that she looked at her phone and observed several missed calls and text messages from family members indicating that they were looking for her.  This caused "Sam" to panic and he immediately drove her to the area of her house and dropped her off on the corner.

Pennsylvania State Police learned Room 109 at the Scottish Inn was rented to Sandro G. Zhinin on March 11, 2017.  At check-in, Zhinin presented his New York Driver License and a Capital One MasterCard debit card to rent the room.

The Pennsylvania State Police prepared a photo lineup, which contained eight individuals, one of them being Zhinin.  A trooper showed the photo lineup to the Minor in the presence of her

3

parents on March 13, 2017.   The Minor positively identified Zhinin as the individual she knew as "Sam."

On March 13, 2017, the Pennsylvania State Police contacted the Red Roof Inn and learned that Zhinin rented a room on March 4, 2017 and checked out on March 5, 2017.   Zhinin presented his New York Driver License to rent the room and paid for it with a Capital One MasterCard debit card.

On March 23, 2017, the Pennsylvania State Police secured and executed a Search Warrant on Zhinin's Capital One Checking Account.   The Capital One Checking Account records received via the warrant revealed that Zhinin's debit card was used to make purchases at the Red Roof Inn on March 4, 2017 for $78.58 and the Scottish Inn on March 11, 2017 for $99.00.   Further, it listed a home address in Brooklyn, New York.

On March 25, 2017, Pennsylvania State Police, in cooperation with the Minor and her parents, communicated with Zhinin.   Zhinin planned to travel once again to meet the Minor victim for sexual purposes.   Once again, Zhinin arranged to pick up the 11-year-old victim at the 4th Street Park in Northampton Borough.   The meeting was planned for Saturday, March 25, 2017. Members of the Pennsylvania State Police conducted surveillance of the park.   At approximately 1:00 p.m., Zhinin was observed in the area of the park and was taken into custody.   A search of Zhinin's person after his arrest revealed he was in possession of a hotel keycard for Room 239 at the Red Roof Inn (Hanover Township, Lehigh County).   Hotel staff verified that Zhinin had just checked in to the room at approximately 12:30 on March 25, 2017.

The hotel room was subsequently searched pursuant to a search warrant, and an   LG Tablet belonging to Zhinin was located.   A search of the LG tablet revealed sexually explicit images,

4

including Zhinin having sex with the 11-year-old in the hotel in Lehigh County on March 11, 2017.

Sandro Zhinin has a New York driver's license and resides in Brooklyn, New York. Zhinin was employed by RealMatch, LLC, in Manhattan, New York. On March 4, March 11 and March 25, all of 2017, Zhinin traveled from New York to Pennsylvania to sexually abuse an 11-year-old girl. The LG Tablet used by Zhinin was manufactured outside the Commonwealth of Pennsylvania.

### III. SENTENCING CALCULATION.

#### A. Statutory Maximum Sentence.

Counts One through Three – Aggravated Sexual Abuse: Lifetime imprisonment, a mandatory minimum 30 years' imprisonment, a $250,000 fine, a mandatory minimum five years supervised release up to lifetime supervised release, a $100 special assessment, and a $5,000 special assessment pursuant to 18 U.S.C.§ 3014, per count;

Count Seven – Production of Child Pornography:  30 years' imprisonment, a mandatory minimum 15 years imprisonment, a $250,000 fine, a mandatory minimum five years supervised release up to lifetime supervised release, a $100 special assessment, and a $5,000 special assessment pursuant to 18 U.S.C.§ 3014.

Count Eight – Possession of Child Pornography:  20 years imprisonment, a mandatory minimum five years supervised release up to lifetime supervised release, a $250,000 fine, a $100 special assessment, and a $5,000 special assessment pursuant to 18 U.S.C.§ 3014.

Total Maximum and Mandatory Minimum Sentence: Lifetime imprisonment, a mandatory minimum 30 years' imprisonment, a $1,250,000 fine, a mandatory minimum five years supervised release up to lifetime supervised release, a $500 special assessment, and an additional

mandatory $25,000 special assessment pursuant to 18 U.S.C. § 3014, for a total of $25,500 in special assessments.   Forfeiture and restitution shall also be ordered.

      **B.**      **Sentencing Guidelines Calculation**.

The Probation Office correctly calculated the defendant's advisory guideline range as an offense gravity score of 48 (which is adjusted to an offense gravity score of 43 as that is the highest offense gravity score available under the sentencing guidelines) and a criminal history category I; resulting in a guideline range of life.

**IV.**      **SENTENCING ANALYSIS**

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is life.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a).   Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the

6

guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### A.   **Nature and Circumstance of the Offense**:

Sandro Zhinin traveled from his home in Brooklyn, New York to have sex with an 11-year-old girl. Zhinin now lies about his actions, and hired a psychologist to support his lies at his sentencing hearing by claiming he had no idea the victim was under the age of 18. The facts belie such a representation, and his attempts to minimize and have his psychologist jump on board his minimization efforts, are nothing short of offensive.

The facts demonstrate the following: The victim stated Zhinin claimed to her to be 19 years-of-age, and the victim reported that she informed Zhinin she was only 11-years-of age (a fact Zhinin admitted to in his change of plea colloquy [3]). Furthermore, in various chat communications between Zhinin and the 11-year-old, it was crystal clear the victim was underage. There were various references to the victim being grounded and having electronic equipment taken away as part of her punishment, as well as to attempts to hide their communication from her parents

---

[3] The defendant should be prohibited from arguing he did not know the victim was a minor, as the plea agreement outlines that he is pleading guilty to three offenses, including possession of child pornography. Possession of child pornography requires knowledge that the victim was a minor. Furthermore, he admitted she told him she was 11 years old in his guilty plea colloquy. He should not now be permitted to go against stipulations that were already agreed upon. Under contract principles, a plea agreement necessarily "works both ways. Not only must the government comply with its terms and conditions, but so must [the defendant]." *United States v. Carrara*, 49 F.3d 105, 107 (3d Cir.1995). A defendant should not be permitted "to get the benefits of [his] plea bargain, while evading the costs." *United States v. Bernard*, 373 F.3d 339, 345 (3d Cir.2004) (concluding that defendant should be held to the terms of her plea agreement, which stated that the agreed-upon guideline should apply). "Under the law of this circuit, [a defendant] cannot renege on his agreement." *United States v. Cianci*, 154 F.3d 106, 110 (3d Cir.1998). When a defendant stipulates to a point in a plea agreement, he "is not in a position to make ... arguments [to the contrary]." *United States v. Melendez*, 55 F.3d 130, 136 (3d Cir.1995), aff'd 518 U.S. 120 (1996); See also *United States v. Williams*, 510 F.3d 416 (3d Cir. 2007).

and sister.

It is not only a fact that Zhinin knew he was traveling to meet a young girl to sexually abuse and videotape his abuse, it was his objective. Zhinin met the minor victim through the online application Meet me. On his "Meet me" page he advertised himself as a 15-year-old boy. He wants this Court to believe he was looking for another adult for sexual purposes and thought that is what he found with the 11-year-old victim. Why then, have a profile page where he advertises himself as a 15-year-old boy. The age his chooses for his profile is illuminating. It strongly suggests that not only was he looking for a minor but a younger minor. The text messages between Zhinin and the 11-year-old victim include the following:

| | |
|---|---|
| Zhinin: | I'll be there soon. Where are yo gonna be |
| 11 y/o: | Okay and I'm in my house when you get there I will walk down. |

. . . .

| | |
|---|---|
| Zhinin: | where are you? |
| Zhinin: | just let me know you're ok.ily |
| 11 y/o: | Hey I'm fine I'm just grounded |
| Zhinin: | Omg I was so worried baby |
| Zhinin | Miss you should much |
| Zhinin | How long are you grounded until |
| 11 y/o | I'm ungrounded tomorrow |
| Zhinin: | Oh ok good. Love and miss you so much When can I see you? |
| 11 y/o: | Can't talk rn we can meet tomorrow at the park the normal one whee you usually pick me up. |
| Zhinin: | Ok let's talk later |

| | |
|---|---|
| Zhinin: | I can try not sure if I can tomorrow tho.   Ill call you later tho (emoji with a kiss and heart) |
| 11 y/o: | Okay I Can't call later because parents and sister are gonna be here and I can't rn just to let you know. |

. . . .

| | |
|---|---|
| Zhinin: | Oh what happened to your phone? |
| Zhinin: | Oh casue you grounded |
| 11 y/o: | Not allowed to have my phone in a month because I didn't pick it up when parents and people were calling me |
| Zhinin: | Oh damn. |
| Zhinin: | Sorry that you got in trouble |
| Zhinin: | Did they hurt you tho?   They better not have |
| 11 y/o: | No of course not but I really wanna see you tomorrow. |

. . . .

| | |
|---|---|
| Zhinin: | So what happened?   What did they say when you got home? |
| 11 y/o: | I just got my phone and computer got taken away |
| 11 y/o: | I gtg I'll talk to you tomorrow |

Zhinin also discussed in text message his paranoia about being caught.   If he thought he was meeting with an adult, why would he be paranoid? It is simple, because he knew he was engaged in illegal activity.   Zhinin admitted his paranoia in the following text message exchange:

| | |
|---|---|
| Zhinin: | You sure you want a Dr pepper |
| Zhinin: | That's the soda I got you last time right |
| 11 y/o: | You got meh sprite |
| Zhinin: | Lol |

9

| | | |
|---|---|---|
| Zhinin: | | Just making sure.  You know how I get paranoid. |
| Zhinin: | | What's your fav food btw? |
| 11 y/o: | | Don't be paranoid you prick my parents are working it's fine Okay And it's watermelon btw |

. . . .

| | | |
|---|---|---|
| Zhinin: | | I don't know.  I'm just being dumb lol |
| Zhinin: | | Same |
| Zhinin: | | I just didn't hear from you for a while and when you text me before you were grounded   you didn't want to answer my questions |
| Zhinin: | | What time do you have to be home if you hang today? |
| 11 y/o: | | Parents will at 4 or 5 PM you know normal time |

Zhinin's entire argument seems to be based on one claimed fact, that he had no idea the victim was a minor and it was certainly not his intention to meet with one (more than once) and have sexual relations with her.   Given the facts outlined above, this is totally unbelievable.

Zhinin clearly knew the victim was a minor; why else would he be paranoid, why else would he have to pick her up at a park and not her house; why else would he claim he was only 19 years of age or have a profile page indicating he was 15 years old, when he was in fact 33.   Why else would he be willing to meet with a girl who told him repeatedly she was grounded or in trouble.   The conclusion is obviously clear.

As if this is not enough to demonstrate Zhinin intended to find a minor victim to sexually abuse, Zhinin also communicated with other minors as evidenced by other chat communications obtained from his LG tablet.   (See Exhibit 2)

**Communications with Zhinin and Minor #2:**

| | | |
|---|---|---|
| Zhinin: | | I want to do dirty things to you. |

10

| | |
|---|---|
| Zhinin: | soooo that means your hot |
| Minor #2: | Ur joking right |
| Zhinin: | No |
| Minor #2: | [expletive] I'm 13 |
| Minor #2: | U know that right |
| Zhinin: | we talked about this |
| Zhinin: | you don't remember |
| Minor #2: | No |
| Zhinin: | like I said you don't at like it do I don't care |

**Communications with Zhinin and Minor #3:**

| | |
|---|---|
| Minor #3: | How |
| Zhinin: | cause you're perfect |
| Zhinin: | and I love you so much |
| Minor #3: | I'm so young tho |
| Zhinin: | i don't mind that tho cause i love you |
| Zhinin: | and i don't care about age |

. . . .

| | |
|---|---|
| Minor #3: | I love u sooooo much and don't ever wanta lose u |
| Zhinin: | I love you like crazy too!!! |
| Zhinin: | you won't lose me |
| Zhinin: | I'm here for you |
| Minor #3: | How old are u I forget |

11

Zhinin:    lol 19

The evidence is overwhelming that Zhinin was sexually targeting minors. His claim to the contrary is simply unbelievable.

### B. **History and Characteristics of Defendant**:

While Zhinin does not have any prior criminal history, he engaged in a pattern of activity that spanned at least several weeks (or months if you include the communications with other minor girls.) Furthermore, he was holding himself out to be a 15-year-old boy in his social media accounts. He has also shown no remorse, and is willing to lie about his actions. The truth is Zhinin was seeking out a minor to sexually exploit, and did so successfully with an 11-year-old victim on two occasions and attempted a third. He also video-taped his abuse.

Despite exhibiting his paranoia about getting caught, it did not stop him from traveling a second and third time from New York to Pennsylvania to sexually abuse the minor again. His deviant sexual desires were so compelling it trumped his concern for getting caught.

Zhinin also has demonstrated that he has no moral compass whatsoever. He was willing to sneak around, steal a child from the safety of her home and parents, take her to cheap hotel rooms and sexually abuse her. That is his history and character.

It is obvious Zhinin is sexually aroused by children and has demonstrated that he seeks young girls out specifically.

### C. **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**:

Zhinin's offenses are serious. Only a significant sentence can match the magnitude of his crimes. Zhinin demonstrated that he was unable to stop himself without law enforcement intervention. A significant sentence reflects the seriousness of Zhinin's crime, promotes respect

for the law, in some way shows some respect to the victim of this offense, and provides just punishment for the offense.

Furthermore, not only did Zhinin attempt to get this Court to believe he had no idea he was preying on an 11-year-old girl, it also demonstrates that he has not taken responsibility for his behaviors nor has he shown any remorse.  He took away a young girl's innocence and her first sexual experience.   He has caused harm not only to his victim, but his victim's family.

### D. **The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant;**

Deterrence is extremely important in child exploitation cases.   Deterrence is one way to attempt to limit the harm.   Zhinin has shown the inability to control his deviant sexually explicit behavior.   For that reason, a significant sentence will protect the public from further crimes of the defendant.

### E. **The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner**

There does not appear to be any need to adjust a sentence based on any education or vocational treatment or for medical care.

### F. **The guidelines and policy statements issued by the Sentencing Commission**

As stated above, the Supreme Court has declared:   "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."   *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

13

V.  **DR. FRANK M. DATTILIO'S REPORT**:

As stated, Zhinin has submitted a psychological report prepared by Dr. Frank Dattilio, a clinical and forensic psychologist. Zhinin relies on Dr. Datillio's findings and representations to support his sentencing advocacy. Dr. Dattilio's report is egregiously flawed. His findings are based on Zhinin's claim that he thought the victim was at least 18 years of age. As already demonstrated, this is a ludicrous representation. While Dr. Dattalio does acknowledge that after viewing the video Zhinin created of his sexual abuse, that the victim appears sexually inexperienced and had a young face and young mannerisms[4], he accepts as true Zhinin's claim that he thought the victim was an adult. As this seems to be heavily relied upon as fact in Dr. Dattilio's findings and opinions, his entire report should be disregarded as totally unreliable.

---

4  In the video the victim states she does not know what to do and giggles at times. Zhinin also places her in sexual positions in which she stays without barely moving.

14

VI.  **CONCLUSION**

Zhinin has engaged in horrific criminal behaviors targeting an 11-year-old girl and now lies about his criminal behavior to obtain some consideration from this Court. His lies have been exposed. A significant sentence is warranted to punish the defendant, deter him and others, demonstrate respect for the law and judicial system, and protect the public for his sexual deviance.

        Respectfully submitted,

        WILLIAM M. MCSWAIN
        United States Attorney


        /s/ Sherri A. Stephan
        Sherri A. Stephan
        Assistant United States Attorney

Dated:  January 3, 2019

**CERTIFICATE OF SERVICE**

I certify that a copy of this sentencing memorandum was caused to be served by Sherri A. Stephan, Assistant United States Attorney, by electronic filing to defense counsel:

Nancy Maceoin, Esquire
Assistant Federal Defender

    /s/ Sherri A. Stephan
Sherri A. Stephan
Assistant United States Attorney

Date:   January 3, 2019